**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 13-26-DLB**

**MARGARET BONITA REED**                                                   **PLAINTIFF**

vs.                       **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting**                                    **DEFENDANT**
**Commissioner of Social Security**

*** *** *** *** *** ***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Margaret Reed filed her current application for Supplemental Security Income (SSI) payments, alleging disability as of February 15, 2006. (Tr.170-73). Plaintiff's claim was denied initially and on reconsideration. (Tr. 110-11). On August 17, 2011, Administrative Law Judge Jerry Meade conducted an administrative hearing at Plaintiff's request. (Tr. 132-35). On October 27, 2011, ALJ Meade ruled that Plaintiff was not entitled to benefits. (Tr. 76-92). This decision became the final decision of the Commissioner when the Appeals Council denied review on January 8, 2013. (Tr. 65-70).

1

On February 24, 2013, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for review. (Docs. # 14 and 15).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110

(6th Cir. 1994).

## B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 81). At Step 2, the ALJ found Plaintiff's osteoarthritis, decreased visual acuity, panic disorder with agoraphobia, unspecified depressive disorder and personality disorder to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 82). In doing so, the ALJ found that Plaintiff's osteoarthritis does not meet the requirements of Listing 1.02 (major dysfunction of a joint) because the treating and examining physician's reports do not reflect ambulatory deficits. (*Id.*). The ALJ also found that Plaintiff's vision is better than that required by Listing 2.02 (visual acuity). (*Id.*). Although the ALJ recognized that Plaintiff suffers from depression, anxiety, agoraphobia and dependent personality disorder, he ultimately determined that Plaintiff did not meet the requirements of Listing 12.04 (affective disorders), 12.06 (anxiety related disorders) or 12.08 (personality disorders). (Tr. 83). In making this determination, the ALJ noted that Plaintiff manages many activities associated with daily living, interacts appropriately with family members and medical staff and has no history of decompensation in work or work- like settings. (*Id.*)

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform medium work, except that:

> [S]he can only occasionally climb ladders, ropes and scaffolds; she must avoid concentrated exposure to irritants such as fumes, odors, dusts and gases in poorly ventilated areas; and she must be able to wear corrective lenses at all times. She is able to understand, remember, and carry out instructions toward performance of simple repetitive tasks. She has a moderately limited ability to carry out the stress and pressures of day-to-day employment and to respond appropriately to coworkers and supervisors in a work setting. Her ability to sustain attention and concentration toward the performance of simple repetitive tasks is slightly limited.

(*Id.*). The ALJ did not consider transferability of job skills because the claimant did not have past relevant work experience. (Tr. 86).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 86-87). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC.[1] (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the medium exertion level as a hand packer (12,500 jobs regionally/228,000 nationally) or dining room attendant (18,000 regionally/325,000 nationally). (*Id.*). The VE further opined that Plaintiff could find work at the light level of exertion as a price marker (7,500 regionally/110,000 nationally) or routing clerk (4,000 regionally/62,000 nationally). (*Id.*). At the sedentary level, Plaintiff could obtain work as an inspector (4,000 regionally/75,000 nationally) or sorter (4,500 regionally/48,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that

---

[1] The ALJ pointed out that Medical Vocational Rule 203.28 would require a finding of "not disabled" if Plaintiff had the RFC to perform a full range of medium work. (Tr. 86). However, the ALJ noted that Plaintiff was "impeded by additional limitations," and incorporated these limitations into the hypothetical questions posed to the VE. (*Id.*).

4

Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (Tr. 87).

**C.     Analysis**

Although not treated separately in the briefing, Plaintiff essentially advances two arguments on appeal. (Doc. # 14). First, Plaintiff claims that the ALJ erred in relying on "opinions of [ ] non-examining psychologists and an aged report of an examining psychologist [who] did not have the opportunity to review the entire record," rather than her most recent psychological examination. Second, Plaintiff argues that the ALJ should have incorporated the VE's response to the second hypothetical question into his Step 5 analysis.

> **1.     The ALJ did not err in relying on the opinions of non-examining psychologists, as well as an outdated report from an examining psychologist, rather than Plaintiff's most recent psychological examination.**

In social security disability cases, medical evidence may come from treating sources, non-treating sources and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source is an acceptable medical source who has not examined the claimant but provided medical or other opinion evidence in the case. *Id.*

ALJs must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and

5

'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Com'r*, 378 F.3d 541, 544 (6th Cir. 2004)(*quoting* 20 C.F.R. § 404.1527(d)(2)). If the ALJ decides that the treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

One meeting is insufficient to establish an ongoing treatment relationship. *Abney v. Astrue*, Civ. A. No. 5:07-394-KKC, 2008 WL 2074011 at *11 (E.D.K.Y. May 13, 2008) *see also Smith v. Com'r*, 482 F.3d 783, 876 (6th Cir. 2007)(holding that the opinion of a doctor, who examined claimant only once and wrote a single "physical capacity evaluation," was not entitled to controlling weight). Similarly, case law suggests that clinical assessments, made by a variety of medical personnel on multiple occasions, are not entitled to controlling weight. *See Saunders v. Com'r*, No. 1:08-cv-1136, 2010 WL 1132286 at *4 (W.D.Mich. March 3, 2010)(rejecting Plaintiff's argument that ALJ failed to consider an assessment by her treating clinic because she did not cite any legal authority establishing a "treating medical clinic rule"); *Hollingsworth v. Astrue*, No. 1:09-0031, 2010 WL 2901830 at *3 (M.D.T.N. July15, 2010)(finding that the ALJ properly considered clinic records made by various professionals within the facility, not all of whom were licensed psychiatrists, as "other source" evidence).

The 20 C.F.R. § 404.1527(d)(2) factors, used to determine how much weight to give a non-controlling opinion from a treating physician, guide the ALJ in determining how much

weight to accord a non-treating physician's opinion. *Davenport v. Astrue*, No. 3:06-cv-402, 2008 WL 641131 at *6 (S.D.O.H. March 4, 2008). While opinions from non-treating sources typically receive more weight than opinions from non-examining sources, deviation from this general approach is not a *per se* error of law. *Norris v. Com'r*, 461 Fed. Appx. 433 (6th Cir. 2012). For example, an opinion from a state agency medical consultant may be entitled to greater weight than examining or treating source opinions. *Blakely v. Com'r*, 581 F.3d 399, 409 (6th Cir. 2009)(*quoting* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3 (July 2, 1996)). This is particularly so when the consultant's opinion is based on a review of the complete case record that "provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

Before considering the merits of this matter, the Court finds it necessary to clarify a few points relevant to Plaintiff's argument. The Motion for Summary Judgment obliquely refers to "recent psychological exams," "opinions of [] non-examining psychologists" and "an aged report of an examining psychologist." Rather than specifying which psychologists' opinions correspond to these labels, Plaintiff simply adds strings of citations to the voluminous medical record and leaves the Court to sort it out. After reviewing the expert opinions cited in Step 4 of the ALJ's analysis, as well as the chronology of Plaintiff's psychological exams, the Court believes that Plaintiff's argument takes issue with four sources: (1) Dr. Phillip Pack's mental RFC assessment of August 3, 2011; (2) Dr. Karen Grantz's consultative examination record of May 17, 2008; (3) Dr. Sam Stodghill's consultative examination report of September 28, 2010; and (4) a Pathways treatment note

dated June 9, 2010.[2]  Specifically, Plaintiff asserts that the ALJ should have given more weight to Dr. Pack's examination and less weight to opinions rendered by Dr. Grantz and Dr. Stodghill.  Plaintiff also contends that the ALJ should have considered the Pathways treatment notes as a whole, rather than selectively considering the cited note.

Both Dr. Pack and Dr. Grantz "opined the claimant would have poor ability or marked limitation in the abilities to deal with work stress, demonstrate reliability, and relate predictably." (Tr. 85, 8F and 33F).  However, the ALJ determined that this opinion was inconsistent with the objective medical findings.  (Tr. 85).  First, the ALJ noted that Plaintiff displayed a pleasant and cooperative demeanor throughout her evaluation and showed no difficulty interacting appropriately with others. (*Id.*).  He then reviewed treatment notes from Pathways Clinic, Carter County Medical Clinic and Ashland Psychiatry Associates, which "contained no findings of social deficits in stress tolerance, persistence or pace." (*Id.*).  The ALJ also found it relevant to discount Dr. Pack's opinion because Plaintiff's representative referred her to his practice for evaluation.  (*Id.*).

Dr. Stodghill determined that "claimant is able to understand, remember, and carry out instructions toward performance of simply repetitive tasks; has a moderately limited

---

[2]The ALJ only cites to these four sources in his Step 4 analysis.  The record makes clear that Dr. Pack performed Plaintiff's "most recent psychological exam."

The Court believes that Plaintiff refers to Dr. Karen Grantz's opinion when discussing the "aged report of an examining psychologist [who] did not have an opportunity to review the entire record."  Of the three expert opinions cited in the ALJ's analysis, Dr. Grantz's report is the oldest.  The report is Exhibit 8F in the administrative record (erroneously labeled as a Consultative Examination Report from Dr. Jeanne Bennett). (Tr. Index 2 and Tr. 376).

By default, Plaintiff's discussion of a "non-examining psychologist['s]" opinion must refer to Dr. Stodghill's report.  However, the record demonstrates that Dr. Stodghill did examine Plaintiff, which qualifies him as an examining psychologist along with Dr. Grantz and Dr. Pack.  *See* 20 C.F.R. § 404.1502 (Tr. 495).

8

ability to carry out the stress and pressures of day-to-day employment and to respond appropriately to coworkers and supervisors in a work setting; and has a slightly limited ability to sustain attention and concentration toward the performance of simple repetitive tasks." (Tr. 85). The ALJ felt that this less restrictive opinion aligned with the objective medical findings, such as Plaintiff's treatment records and general demeanor. Therefore, the ALJ gave Dr. Stodghill's opinion great weight in determining mental limitations for Plaintiff's RFC. (Tr. 86).

These psychologists qualify as non-treating sources because each examined Plaintiff once. Accordingly, none of their reports were entitled to controlling weight. The ALJ, tasked with weighing each opinion according to the 20 C.F.R. § 404.1527(d)(2) factors, took care to explain how much weight he assigned to each source and why. Although Dr. Pack's opinion was most recent, the ALJ did not give it much weight because it was inconsistent with the record as a whole and had been solicited by Plaintiff's representative. Dr. Grantz's opinion was likewise discounted because it was not supported by objective medical findings.[3] The ALJ gave Dr. Stodghill's opinion, rendered less than a year before Dr. Pack's assessment, more weight because it was consistent with the objective medical findings. ALJs may give opinions from state agency medical consultants more weight due to their experience with these types of cases. The Court finds no error in the ALJ's treatment of these sources.

---

[3] Plaintiff's Motion for Summary Judgment posits that the ALJ should have given Dr. Grantz's opinion less weight. This assertion is counterintuitive for two reasons. First, Dr. Grantz's opinion actually accords with Dr. Pack's opinion, which Plaintiff feels is most accurate. Second, the ALJ actually *did* discount Dr. Grantz's opinion, not necessarily due to its age, but because it was not supported by the objective medical findings. Therefore, the Court need consider this half-baked argument no further.

Plaintiff also argues that the ALJ selectively considered one treatment note, rather than viewing the notes as a whole and affording them more weight. However, the ALJ's Step 4 analysis indicates that he reviewed treatment notes from Pathways Clinic, Carter County Medical Clinic and Ashland Psychiatry Associates. (Tr. 85). The fact that the ALJ cited an excerpt from one treatment note as an example does not mean that he selectively considered them. Therefore, the Court finds no error in the ALJ's review of Plaintiff's treatment notes.

2. **The ALJ did not err in failing to rely upon the VE's answer to the second hypothetical question in Step 5 of his analysis**.

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

At the administrative hearing, the ALJ posed two hypothetical questions to the VE. In the first question, the hypothetical individual had a moderately limited ability to tolerate stress, a moderately limited ability to respond to supervision and co-workers and a slightly limited ability to sustain attention and concentration towards simple, repetitive tasks. (Tr. 105-06). The VE testified that there were numerous jobs in the regional and national economy that such an individual could perform. (*Id.*). The ALJ slightly modified this hypothetical, asking the VE to consider a similar hypothetical individual with a *marked* limited ability to tolerate stress and a slightly limited ability to sustain attention and concentration towards simple repetitive tasks. (Tr. 106-07). This individual would also

10

have a *marked* limitation in ability to respond appropriately to supervision and work pressures, which would deteriorate as the number of co-workers increased. (*Id.*). The VE responded that the jobs cited in the first hypothetical would be eliminated from consideration and there would be no other unskilled jobs that such a person could perform. (Tr. 107-08).

Plaintiff argues that the ALJ should have relied on the VE's response to the second hypothetical in conducting his Step 5 analysis. However, the propriety of such hypothetical questions depends upon the ALJ's RFC finding. While the limitations in the first hypothetical reflect Dr. Stodghill's findings, the second incorporates the discounted opinions of Dr. Grantz and Dr. Park. As discussed earlier in this opinion, the ALJ properly weighed these medical sources and determined that Dr. Stodghill's assessment was entitled to the most weight. Because the ALJ is only required to include the limitations that he finds plausible into the hypothetical, the Court finds that he did not err in relying on the VE's response to the first hypothetical.

## III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 6th day of February, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\0-13-26 Reed MOO.wpd